IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA K. PINTER,

        Plaintiff,

   v.

CFH INVESTMENTS, LLC,;
C. THOMAS DAVIS; and MICHAEL
T. DAVIS

        Defendant.

Case No. 6:14-cv-01571-AA
OPINION AND ORDER

AIKEN, Chief Judge:

    Defendants CFH Investments, LLC, C. Thomas Davis, and Michael T. Davis move for summary judgment against plaintiff, Lisa K. Pinter, pursuant to Fed. R. Civ. P. 56. Defendants also move to compel discovery in accordance with Fed. R. Civ. P.

1 - OPINION AND ORDER

26(a)(1)(A)(iii). Plaintiff requests that the court take judicial notice of certain facts and documents pursuant to Fed. R. Evid. 201. For the reasons below, defendants' motions are DENIED.

## Background

On March 7, 2014, defendants C. Thomas Davis and Michael T. Davis filed a debt collection action against plaintiff on behalf of, and as attorneys for, fellow defendant CFH Investments, LLC. See Eidenberg Decl. Ex. 1 at 4. In June of 2014, an enforceable General Judgement and Money Award was entered against plaintiff. Id. This money award legally entitled defendants to garnish plaintiff's wages in compliance with State and Federal Law. Id.

Also in June of 2014, a writ of garnishment was served on plaintiff's employer and sent to the plaintiff. The writ of garnishment reflected that $196.50 of plaintiff's weekly pay was exempt from garnishment. Def.'s Partial Mot. For Summ. J. at 3. The parties agree that this amount was incorrect and that the notice should have indicated a wage exemption of $218.00 per week. Eidenberg Decl., Ex. 1 at 5. Defendants actually garnished $217.50 from plaintiff's pay. Id. The parties agree that the total amount garnished, in excess of applicable Oregon law, was $5.50. Id.

Defendants claim that C. Thomas Davis, and Michael T. Davis have a procedure to ensure that outdated garnishment forms are

2 - OPINION AND ORDER

not sent to debtors and their employers. C. Thomas Davis Decl., ¶ 7. This procedure involves periodically checking the statutes cited in the form to ensure that they are still accurate. Id. If a form is found to be outdated, new forms are ordered, and all prior forms are eradicated from the office. Id. ¶ 8. Defendants claim that this process was performed roughly three months before plaintiff's employer was served with the incorrect garnishment order. Id. ¶ 9.

Plaintiff claims in her complaint that defendants violated the Fair Debt Collection Practices Act (FDCPA) and caused actual damages in the form of "emotional distress, anger, anxiety, worry, frustration, among other negative emotions." Pl.'s Compl. ¶ 20.

Defendants move for an order granting summary judgement on: (1) defendants' affirmative defense of a bone fide error; and (2) plaintiff's claim for actual damages. Def.'s Partial Mot. For Summ. J. at 1-2. Additionally, defendants move to compel plaintiff to identify the precise amount or value of plaintiff's claim for actual damages. Def.'s Mot. To Compel Disc. at 1. In turn, plaintiff requests judicial notice of the current federal minimum hourly wage and the date it was codified, the year Oregon's wage exemption was brought into conformity with federal law, and two documents. Pl.'s Req. For Judicial Notice at 1-2.

3 - OPINION AND ORDER

**Standard**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. Rivera v. Phillip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. Id. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (citing Hunt v. Comartie, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**Discussion**

A. Bona Fide Error Defense

Under the FDCPA, debt collectors are liable for violations regardless if they were done knowingly or intentionally. Clark v. Capital Credit & Collection Serv., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006). However, there is a narrow exception for violations that are the result of a bona fide error. Reichart v.

4 - OPINION AND ORDER

National Credit Sys., Inc., 531 F.3d 1002, 1005 (9th Cir. 2008). The bona fide error defense is defined statutorily and provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

In their motion for summary judgment, defendants argue that their alleged violations of the FDCPA were the result of a bona fide error. Def.'s Partial Mot. For Summ. J. at 6. The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof. Reichart, 531 F.3d 1002, 1006 (9th Cir. 2008). Defendants argue in their reply brief that the plaintiff has not presented any evidence to refute their assertion of a bona fide error defense. However, it is entirely defendants' burden, as the moving party, to prove their affirmative defense by a preponderance of the evidence. 15 U.S.C. § 1692k(c). Viewing the facts in a light favorable to the non-moving party, this burden has not been met. Miller, 454 F.3d at 988.

The Ninth Circuit has divided the bona fide error defense into three parts. The debt collector must show that the error

5 - OPINION AND ORDER

(1) was unintentional, (2) bona fide, meaning made in good-faith, and (3) resulted nonwithstanding "reasonably adapted" procedures to avoid it. McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2012). Plaintiff does not contest that the mistake was made unintentionally. Further, plaintiff does not assert that the mistake was made in the absence of good faith. Instead, the issue is whether defendants' mistake was made notwithstanding the maintenance of a procedure that was reasonably adapted to prevent the mistake. Id.

To invoke the bone fide error defense, the procedure must be both maintained and reasonably adapted to avoid the error. Reichart, 531 F.3d at 1007. Defendants' stated procedure involved checking forms periodically for accuracy and destroying all outdated forms once new ones were acquired. It can be assumed that this procedure was reasonably adapted to avoid the error in question. Their error was sending information to a debtor that was statutorily inaccurate, and the procedure, if faithfully executed, was designed to eliminate this specific mistake. However, the statute clearly requires the "*maintenance of procedures*," not just the existence of procedures which are never utilized. 15 U.S.C. § 1692k(c).

The notice sent to plaintiff incorrectly informed her that $196.50 of her weekly income was exempt from garnishment under state and federal law. However, 15 U.S.C. § 1673 provides that

6 - OPINION AND ORDER

thirty times the current minimum hourly wage is exempt from garnishment. The relevant minimum wage at the time was $7.25 an hour, resulting in a weekly exemption of $217.50. See 29 U.S.C. § 206(A)(1)(c). Moreover, the weekly exemption has been this amount since 2009. Id. The amount provided by defendant to plaintiff instead reflected the minimum wage from 2008; meaning that the information on the garnishment notice had been out of date for five years by federal standards. 29 U.S.C. § 206(A)(1)(b). Further, both sides agree that Oregon's garnishment exemptions were updated in 2011.[1] When applying Oregon law, the notice served on the plaintiff was outdated by three years.

Defendants claim that their vetting procedure was used three months before the writ of garnishment was served on plaintiff. At this time, defendants claim that the notice was updated to reflect current law, and the prior forms were removed from the office. This leaves the question of how a form with information outdated by three to five years was served upon the plaintiff. As explained above, defendant must not only prove they had a procedure, they must prove that they maintained procedures reasonably adapted to avoid the error in this case. See 15 U.S.C. § 1692k(c); Reichart, 531 F.3d at 1007. Defendants

---

[1] Plaintiff requests that the court take judicial notice of these facts. Defendants do not dispute them, and the request is granted only to this extent.

7  - OPINION AND ORDER

offer no evidence to explain how a properly maintained procedure could fail to prevent the issuance of a form that was several years out of date, beyond the testimony of Mr. Davis that he periodically reviews the notice form.

Absent any reasonable explanation of how a form this outdated made its way to plaintiff, this court can not find, by a preponderance of the evidence, that defendants maintained a procedure reasonably adapted to prevent this mistake. Therefore, defendants' motion for summary judgment on the bona fide error defense is denied.

B. Emotional Damages

Defendants next move for summary judgment on plaintiff's claim for emotional damages under 15 U.S.C. § 1692k(a)(1). District courts in the Ninth Circuit are split on whether a plaintiff's claim for emotional distress damages under the FDCPA should be evaluated under state tort law standards of intentional infliction of emotional distress (IIED). Alonso v. Blackstone Financial Group LLC, 962 F. Supp. 2d 1188, 1199 (E.D. Cal. 2013). The Ninth Circuit has yet to address this issue. Id.

Some district courts have held that a plaintiff must prove all the elements of an IIED claim in order to seek damages of emotional distress under the FDCPA. Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007); Valero v. Bryant, LaFayette and Assoc., LLC, No. 1:10-cv-01174-OWW-GSA,

8 – OPINION AND ORDER

2011 WL 1438436, at *3 (E.D. Cal. April 14, 2011). The court in Costa found no evidence that Congress "intended to create a more lenient IIED standard in enacting the FDCPA." Costa, F. Supp. 2d at 1078. Further, the court explained that the FDCPA required definable standards for actual damages, and the standards applicable to a state IIED claim fulfilled this purpose. Id. However, the same district court subsequently found that the Fair Credit Reporting Act (FCRA) has the same requirements as the FDCPA, and noted that the Ninth Circuit allowed actual damages from emotional distress under the FCRA. Riley v. Giguiere, 631 F. Supp. 2d 1295 (E.D. Cal. 2009) (finding that the FDCPA and the FCRA have the same purpose and "virtually identical" language regarding actual damages). The court found it logical that two statutes with a similar purpose, and almost identical language, would be interpreted in a similar fashion. Id.

Although the Ninth Circuit has not addressed emotional distress damages under the FDCPA, the Circuit has held that actual damages under the FCRA require only a showing that the plaintiff actually suffered symptoms of emotional distress. Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995). Other district courts have relied on Guimond, and the similarities between the FDCPA and the FCRA, to award actual damages for emotional distress under the FDCPA. See Riley, 631

9 - OPINION AND ORDER

F. Supp. 2d at 1315; Alonso v. Blackstone Fin. Group LLC, 962 F. Supp. 2d 1188 (E.D. Cal. 2013); Healey v. Trans Union LLC, No. C09-0956JLR, 2011 WL 1900149 (W.D. Wash. May 18, 2011). This court finds the rationale in Riley and its progeny to be more persuasive than the reasoning set forth in Costa.

Defendant raises a novel argument based on the language from the decision in Baker v. G.C. Servs. Corp., 677 F.2d 775 (9th Cir. 1982). In Baker, the Ninth Circuit held that a party need not prove actual damages in order to receive statutory damages under the FDCPA. Id. at 780. In dicta, the court also stated that "(t)he only actual damages that a plaintiff would be likely to incur would be for emotional distress caused by abusive debt collection practices and, unless the violations are extreme and outrageous, traditional stringent evidentiary hurdles would be difficult to overcome." Id. Defendant argues that the court's use of the words "extreme and outrageous" mirrors the elements of IIED claims and suggests that a plaintiff must prove those elements to obtain emotional damages.

However, Baker does not explicitly address the issue raised here, and I find that defendants' argument does not undermine the rationale from Riley. The Ninth Circuit had the opportunity to impose the burden of proving IIED to establish emotional damages in Guimond, which was decided thirteen years after Baker. As discussed before, the language in the FCRA defining

10 - OPINION AND ORDER

civil liability is nearly identical to the FDCPA. If the Ninth Circuit had intended to stand by the dicta in Baker, it likely would have applied the IIED standard in Guimond.

I find this result consistent with Congress's findings and purpose section for the FDCPA. In this section, Congress found that "existing laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C. § 1692(b). Standards for IIED and other torts claims existed before this Act, suggesting that it was these causes of action that Congress found to be inadequate. It is therefore reasonable to find that Congress intended for consumers to be awarded statutory and actual damages, under the FDCPA, in lieu of preexisting tort claims that Congress found to be inadequate.

Finally, I agree that, in addition to addressing inadequate laws, Congress also intended to provide uniformity within the FDCPA. See Alonso, 962 F. Supp. 2d at 1199. The Act provides that its purpose is to "promote consistent State action to protect consumers…" 15 U.S.C. § 1692(e). The district court in Alonso reasoned that applying state tort law would be counterintuitive to this purpose of the FDCPA, because applying state law would create numerous different outcomes dependent on which forum's law was applied. 962 F. Supp. 2d at 1200. Further, Alonso noted that applying state tort law would allow states to

11 - OPINION AND ORDER

trump the intentions of Congress by imposing more stringent or relaxed requirements to obtain emotional damages. Id. at 1201.

Following the reasoning of Riley, Guimond, and Alonso, plaintiff is not required to prove the elements of IIED to seek emotional distress damages. Therefore, the court need not evaluate defendants' arguments regarding plaintiff's ability to prove the elements of an IIED claim, and defendants' motion for summary judgment on the plaintiff's claim for actual damages is denied.

C. Motion to Compel

Defendants move to compel plaintiff to identify the specific amount or value of actual damages that plaintiff is alleging. Defendants argue that it is insufficient for plaintiff to rely on the court to determine the monetary value of her emotional damages. According to Fed. R. Civ. P. 26(a)(1)(A)(iii), a party must, without awaiting a discovery request, provide to the other party "a computation of each category of damages claimed by the disclosing party... including materials bearing on the nature and extent of injuries suffered[.]"

Regardless, district courts in the Ninth Circuit have frequently denied motions to compel computations of emotional distress damages because emotional damages are difficult to quantify, and are generally considered to be a factual issue for

12 - OPINION AND ORDER

the jury. See Maharaj v. California Bank & Trust, 288 F.R.D. 458, 463 (E.D. Cal. 2013); E.E.O.C. v. Wal-Mart Stores, Inc., 276 F.R.D. 637, 639 (2011). However, when a plaintiff fails to provide a defendant with the specific amount of damages sought, the "plaintiff may be foreclosed from suggesting that specific amount for emotional distress damages to the jury at trial." E.E.O.C., 276 F.R.D. at 639-40; see also Williams v. Trader Pub. Co., 218 F.3d 481, 486-87 (5th Cir. 2000); Sandoval v. American Bldg. Maint. Indus., Inc., 267 F.R.D. 257, 282 (D. Minn. 2007).

Plaintiff apparently has not claimed a specific amount of actual damages. Pl.'s Compl. ¶ 24. This may bar plaintiff from suggesting a specific amount of actual damages to the jury, but it does not compel plaintiff to disclose a specific amount to defendant.

## Conclusion

Thus, defendants' motion for summary judgment (doc. 20) is DENIED. Defendants' motion to compel (doc. 18) is also DENIED. Plaintiff's request for judicial notice (doc. 31) is GRANTED IN PART.

IT IS SO ORDERED.

Dated this 30th day of October, 2015.

Ann Aiken
U.S. District Judge

13 - OPINION AND ORDER